March 7, 2024

Hon. Analisa Torres
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 15D
New York, NY 10007-1312

Re:    *U.S. v. Philip Dallmann*, 22-CR-660

## VICTIM IMPACT STATEMENT

Dear Your Honor:



        I am the Founding Director of ▮▮▮▮▮▮▮▮ and its current Executive Director. ▮▮▮▮▮
▮▮▮▮ is a not-for-profit service organization that provides inclusive arts programming for
developmentally disabled children and other individuals. Our programs support a wide range of
therapeutic and educational goals, including art-based classes aimed at social and skill
development and interactive, multi-sensory theater performances designed to be enjoyed by
children of all developmental and social profiles. ▮▮▮▮▮▮▮▮ performers are trained to
respond in the moment, ensuring that everyone can experience the joy of a live theater performance
in their own way. Students learn to follow directions, build attention capacity, and improve social
interaction in an engaging atmosphere.

        ▮▮▮▮▮▮▮▮▮ is not one of the more well-known charities and is certainly not well-
funded, but we know the importance of our work and the impact it has on our students, providing
the opportunity for imagination and connection through theatre and dance for students of all ages
and abilities, regardless of ability or diagnosis, targeting those children who are often left out of
experiences like these. Further, we have the opportunity to support the artist community by
providing fulfilling employment opportunities. Every penny we raise matters.

        Since its founding in 2015, ▮▮▮▮▮▮▮ has prided itself on its very low administrative
expenses. We receive support from grants and charitable donors, who believe in our mission. For
FY 2022, our total revenue was approximately $120,000 and programming costs were
approximately $113,000.

        Philip Dallmann was entrusted as ▮▮▮▮▮▮▮▮ Executive Director in February 2018. We
trusted him with our charity, to carry out our mission and act as a steward over our precious funds.
Our thinly resourced organization had no reason not to trust him, especially considering his active
engagement in the community as one of the main people working at the Theatre Development
Fund, focusing on the Autism Theatre Initiative and since he was the husband of one of our beloved
teachers. That changed in June 2021.

        At the start of the summer in 2021, I was made aware of some irregular correspondence
coming from our Board Treasurer to Mr. Dallmann's then wife about a purported loan to our
organization. In discussing this with the Board Treasurer, it was made clear that he (the Board
Treasurer) was not the person penning those emails. We also realized that we'd both been closed

out of the ████████ accounts (bank accounts and donation sites) under the mistaken impression that the other one had access. This realization caused much alarm when we decided to look into our QuickBooks account, which we still had access to, where we noticed a strange charge on ████████ debit card statement – thousands of dollars to a moving company that did not make any sense for our organization. Knowing that Mr. Dallmann was in the process of moving cross-country to start a position with the Boys & Girls Club in Seattle, Washington, I assumed that the charge was a mistake. While I was trying to get in touch with Mr. Dallmann, I looked at the statement in more detail and noticed other curious charges, such as dog walking services, also that would not make sense for our organization.

I was concerned and decided to contact ████████ pro bono attorneys, who offered to reach out to Mr. Dallmann to sort this issue out before he moved out-of-state. Mr. Dallmann assured everyone it was a mistake – with the chaos of moving, he said that he accidentally used his ████████ debit card for a couple of personal charges, but promised to pay ████████ back right away. He also apologized for never getting around to granting account access to our Board Treasurer before he left and assured us he would do that ASAP to maintain transparency. Except he didn't do either. He actually kept making charges to ████████ debit card even after I reached out to him and he spoke with ████████ attorneys. We no longer believed it was a mistake.

Mr. Dallmann was supposed to provide ████████ with all of its banking information (e.g., accounts, user names, and passwords), but provided the wrong information. He gave incorrect passwords and did not authorize anyone else at our organization to access the accounts as promised. ████████ was locked out of its accounts entirely for more than a week while we tried to get permission to access its own funds from our bank. Mr. Dallmann provided no help in this regard.

When we finally got access to our accounts (bank, debit card, and donation account statements), we were shocked by what we saw. Mr. Dallmann had been using our accounts as his personal piggy bank, taking out cash for personal expenses, charging parts of his wedding to our organization, dog walking services, wine and beer purchases, dry cleaning, clothing, and everything in between. He was also directly diverting donations to his personal credit card. To make matters worse, it seemed like death by a thousand cuts – constant charges for cabs, coffee, and Amazon purchases, near daily. We were also plagued by overdraft and other banking fees because of his actions.

As soon as we learned of Mr. Dallmann's fraud, ████████ did not accept donations and suspended grant applications since we did not know what was being diverted to Mr. Dallmann or used by him personally. We, of course, do not have an exact amount of how much we would have received in donations and grants if we had not suspended donations during our investigation. Our law firm conducted an investigation of what happened without charging us and found a forensic accounting firm to do the same.

We canceled our cherished classes and upcoming performances because we were not able to pay our teachers. The children were left without explanation as to why their favorite activities were no more; there was no place to dance, act, or try their hand at musical theater after all the

work that had been done to pivot to virtual programming during the COVID pandemic. It's not as though there are many other organizations providing similar services – a safe, theatrical environment – for developmentally disabled children, especially in the midst of a global pandemic. Our classes are unique, but our bank accounts had been overdrawn. There was nothing we could do. Mr. Dallmann left us with nothing except reputational damage.

It took bridge loans from our Board Members so that we could rebuild our entire organization with stricter controls in place.

Each personal charge by Mr. Dallmann was basically a loss of a class for these students in need: a $2,500 payment for by Mr. Dallmann for his personal car meant ███████████ had to cancel a virtual performance; a thousand dollars for dog walking and grooming meant no musical theater class; hundreds of dollars at Banana Republic Factory for khakis or whatever else meant the children could not dance... the list goes on and on. While we can provide an accounting of the money we actually lost, there will never be a way to truly account for experiences, the interpersonal connection time, and the imaginative play lost by our participants and their families.

Very truly yours,

*/s/* ██████████████

Executive Director
██████████████

# DECLARATION OF VICTIM LOSSES

District Name: New York-Southern
*U.S. v. Philip Dallmann*
Case No.        0208 1:22CR00660-001

███████████ a not-for-profit organization, residing at 99 Wall Street, Suite 2465, in the city of New York, in the state of New York, is a victim in the above-referenced case. ███████████ believes that it is entitled to restitution in the total amount of: **$94,232.48**.

███████████'s specific losses, harms, and costs as a result of this offense are summarized as follows:

**$90,162.69** of fraudulent Debit Card charges and fraudulent ATM withdrawals by Philip Dallmann from ███████████ PNC bank account and related fees (detailed in the attachment)

**$4,069.79** of diverted donations by Philip Dallmann from ███████████ Stripe donation platform (detailed in the attachment)

███████████ has not been compensated by an insurance company or any other source for any of these losses.

I declare under the penalty of perjury that the foregoing is true and correct.

DocuSigned by:

███████████   _____

███████████   Executive Director

Executed on

_8th_____ day of March, 2024.